No. 35,027

C. D. INSLEE et al., *Appellees,* v. TOM PALMER, *Appellant.* (RALPH OWEN et al., *Defendants.*)

(109 P. 2d 208)

Opinion filed January 25, 1941.

Mark H. Adams, Charles E. Jones, Herman W. Smith, all of Wichita, Riley W. MacGregor and H. Hobble, Jr., both of Medicine Lodge, for the appellant.

Albert L. Orr, of Medicine Lodge, for the appellees.

The opinion of the court was delivered by

Hoch, J.: This was an action to require specific performance of a contract to purchase an oil royalty interest. Plaintiffs prevailed, and defendant appeals.

The contract covered two separated tracts. Payment was made as to one tract but refused on the second upon the ground of unreasonable delay in furnishing a good title thereto. Appellees contended that the contract was indivisible, and that under the facts as hereinafter stated appellant was estopped from refusing payment on account of the delay.

The contract reads as follows:

"This agreement made and entered into this 8th day of March, 1938, by and between Dale Inslee and Lulu Inslee, party of the first part, and Tom Palmer, party of the second part.

"And whereas, party of the first part agrees to sell and party of the second part agrees to buy the following described royalty acres as follows: The south one-half of the southeast quarter of sec. 17 and the northwest quarter of the southeast sec. 17 and the northeast quarter of the northeast quarter of sec. 20, and the southeast quarter of the northeast quarter and the north one-half of the southeast quarter of sec. 19, all in twp. 31, range 10.

"Subject to the approval of title by party of the second part attorneys an undivided one-half interest in 280 acres totaling 140 royalty acres for the sum of $1,750 to be deposited with the Sharon Valley State Bank, Sharon, Kan., and Ralph Owen as escrow agent, that he be instructed to deliver to party of the first part on acceptance of approval of title by party of the second part and deliver the party of the first part all moneys deposited in the above mentioned bank and held in escrow under this agreement. Party of the first part has 30 days from this date to perfect any requirements on these titles or a reasonable time thereafter.

"Signed by parties of the first and second part and accepted by Ralph Owen as escrow agent."

In compliance with the contract, the Inslees promptly delivered the abstracts of title to Owen, the escrow agent, at the bank in Sharon, and Palmer deposited with him the $1,750. It will be noted that the contract covered the sale of one-half the royalty on a total of 280 acres, or, as it is referred to, "140 royalty acres." On account of diversity of ownership, which need not here be described, two separate deeds were executed and placed in escrow, one affecting the

160-acre tract and the other the 120 acres. About the middle of March the abstracts were delivered, at the bank, to Ben J. Bonner, Jr., of the law firm of Bonner, Bonner, & Bonner, for examination. Upon his report to Palmer that the title to the 160 acres was satisfactory, Palmer directed the bank to pay $1,000 to the Inslees, which was done the latter part of March. Title to the 120-acre tract having been found defective, a quiet-title action was begun in May, 1938; but final judgment was not taken until April, 1939. After judgment, demand was made for the balance of $750 and upon refusal this action was brought. The defendant Palmer, in his answer, alleged that at the time the contract was executed there was considerable oil leasing and drilling activity in the vicinity of plaintiffs' land, and that the value of the royalty interest was of a highly speculative and fluctuating character, all of which was known by the plaintiffs; that plaintiffs did not furnish a good and merchantable title within thirty days or within "a reasonable time thereafter"; that he did not authorize the quiet-title action and did not employ any attorneys to participate for him in such action; that long prior to completion of the action he advised the plaintiffs that the contract had been terminated on account of the delay in furnishing good title; that within about ninety days after the execution of the contract, oil activities in the vicinity ceased and that the royalty interest had become valueless. In their reply, plaintiffs denied generally the allegations of the answer, and alleged that the attorneys for defendant Palmer, who had made the quiet-title requirement, approved a draft of the petition, the affidavit for service by publication and the publication notice, and the journal entry of judgment finally entered in the action to quiet the title.

The trial court made specific findings of fact and conclusions of law which need not be narrated in full. In addition to a narrative recital of unquestioned facts, the court found that Palmer was an officer of the Palmer Oil Corporation, that sometime prior to the execution of the instant contract, the Palmer Oil Corporation had taken oil and gas leases upon the lands in question, and that about March 1, 1938, the company had commenced a test well for oil and gas near the Inslee land, which well was completed as a dry hole about May 10, 1938; that Palmer individually acquired oil and gas interests for speculation; that the Bonner law firm were examining attorneys for the company; that Palmer relied upon their opinion as to the title and that on March 23 or 24, 1938, he accompanied Ben Bonner to the Inslee home where the title opinions were delivered

to them and the bringing of a quiet-title action was discussed, and that on March 26, 1938, the Bonner firm rendered a supplementary opinion to Charles R. Inslee recommending that such an action be brought; that the plaintiffs at first negotiated with the Bonner firm to bring the action, but later employed attorneys selected by plaintiffs' grantor (presumably because of the warranty clause in the deed to the Inslees); that although the action, begun on May 17, 1938, was actively prosecuted, judgment was not rendered until April 17, 1939; that "the Inslees were at all times proceeding diligently and in good faith to perfect said title at the earliest possible date, and the Bonner firm was at all times kept advised of the progress of said proceedings, and pleadings and journal entries were submitted to them for approval before filing;" that in June, 1938, Palmer called the escrow agent by phone and asked him to apply the remaining $750 on certain indebtedness owing by him, as he could not then accept the conveyance, but that the bank advised him that the Inslees were quieting title and expecting the contract to be carried out, and that he could not so dispose of the money without their consent. The court further found that there was no persuasive evidence that the Inslees were ever directly advised of such conversation; that Palmer, being fully aware that a quiet-title action would be necessary, encouraged the Inslees to bring such action and to continue its prosecution without any direct notice on his part that he was rescinding the contract, conditionally, in whole or in part, until long after the quiet-title action had been completed; that Palmer never offered to place plaintiffs in status quo or to reconvey the interest in the 160-acre tract. The court found, as conclusions of law, that the contract was entire and indivisible, and that by receipt and acceptance of one of the mineral deeds, after full knowledge of the condition of the title of all the land, Palmer was bound thereby; that by his acts and conduct, and that of those entrusted with his affairs, he was estopped from rescinding the contract because of delay in furnishing good title. Plaintiffs were given judgment for $750 with interest.

Before proceeding to the instant issues it may be well to make clear that we are not here presented with a controversy as to whether the contract related to a one-half interest in the "royalty" that might accrue under the leases on the land, or to a one-half interest in the minerals in place. The petition alleged that the contract called for the sale of certain "royalty interests" and appellees have so treated it in their brief and argument. Appellant, on the other hand, refers to it as "the mineral or royalty interest," leaving it un-

certain as to which he really considered it. The conveyances them-
selves are not shown in the record and apparently were not before
the trial court. In any event, it makes no difference in determining
the issues here whether the parties contemplated conveyance by
mineral deed of an individual one-half interest in the minerals in
place, or the sale of an undivided one-half of the royalty that might
accrue from production under the leases on the land. The contract
uses the term "royalty acres." While the use of the term to desig-
nate a royalty interest has been criticized, and perhaps justly so, it
is frequently used to describe an undivided interest in royalty accru-
ing from production computed on an acre basis (see Glassmire, Oil
and Gas Leases and Royalties, 1935 Ed., sec. 83, p. 264). We shall,
therefore, refer to the contract—for narrative purposes only—as one
for the sale of a royalty interest. No terms herein used, however,
are intended to indicate any determination as to the exact nature of
the interests to be conveyed under the contract, as that question is
not at issue.

The first question is whether the contract by its terms was sepa-
rable or divisible, and if not, whether the plaintiffs made it so by
their acceptance of the payment of $1,000 for the royalty interest on
the 160-acre tract. We have no hesitancy whatever in saying that
the contract, by its terms, was entire and indivisible. The fact that
the land described in the contract is situated in different sections is
immaterial. The agreement was to sell one-half the royalty accru-
ing on the combined acres described. The payment was to be a
lump sum of $1,750. Had the Inslees, subsequent to the execution
of the agreement, advised Palmer that they had decided to sell an
interest on only one or two of the parcels described in the contract,
unquestionably Palmer would have been entitled to regard the whole
contract rescinded. He had contracted for "140 royalty acres" and
could not have been compelled to accept less. (See 3 Williston on
Contracts, Rev. ed., § 861 et seq.; 13 C. J. 563.)

It is equally clear that the agreement was not made divisible by
the acceptance of the $1,000. Such acceptance is in no way incon-
sistent with the terms of the contract and there is nothing in the rec-
ord to indicate that it constituted or was construed by the parties as
a modification of the terms.

The only remaining important question is whether the record sup-
ports the findings of the trial court that by his acts and conduct, and
the acts and conduct of those entrusted with handling his affairs,
the appellant is estopped to assert that the appellees failed to per-

fect the title to the 120-acre tract within a reasonable time. We think the findings and conclusions are amply supported, and it is unnecessary to recite in detail the evidence pertinent to the question. There was evidence that appellant relied upon the report of attorney Bonner—who, he says, was in the employ of the Palmer Oil Corporation—that he knew that the quiet-title action was necessary, that appellees instituted the action in compliance with the title requirement by Bonner, that the Bonner firm was kept in touch with the proceedings from the start, and approved papers in the case, including approval of the final journal entry, and that the man whom appellant had designated as grantee to receive the conveyance was present in court and participated in a compromise adjustment in connection with the quiet-title action; that it was two or three months after the well—which was being drilled near the land in question when the contract was executed—came in a dry hole that appellant asked the escrow agent to take out the balance remaining in the escrow fund.

We find no error. The judgment is affirmed.